## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 24-cr-41 (ABJ)** |
| **v.** | : | |
| | : | |
| **GREGORY MIJARES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### UNITED STATES' OPPOSITION TO THE
### DEFENDANT'S MOTION TO DISMISS COUNTS FOR SELECTIVE
### PROSECUTION AND FOR DISCOVERY AND AN EVIDENTIARY HEARING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant Gregory Mijares' Motion to Dismiss Counts for Selective Prosecution and For Discovery and an Evidentiary Hearing, ECF No. 24. Mijares echoes similar motions repeatedly denied by courts in this jurisdiction.[1] Ultimately, Mijares' motion fails to show he has been treated differently than other similarly situated individuals—none of the other individuals Mijares identifies as comparators "committed

---

[1] *See United States v. DaSilva*, 21-cr-564 (CJN) (July, 12, 2023) (minute order denying a selective prosecution motion where defendant was also charged with violations of 18 U.S.C. §§ 111, 231(a)(3), and misdemeanors); *United States v. Bennet*, 21-cr-312 (JEB), ECF No. 145, 2023 WL 6847013 (D.D.C. Oct. 17, 2023) (same); *United States v. McHugh*, 21-cr-453 (JDB), ECF No. 92, 2023 WL 2384444, at *13 (D.D.C. Mar. 6, 2023) (charged with violating 18 U.S.C. § 231(a)(3), among other counts); *United States v. Padilla*, 21-cr-214 (JDB), ECF No. 67, 2023 WL 1964214, at *4-6 (D.D.C. Feb. 13, 2023) (same); Order, *United States v. Miller*, 21-cr-119 (CJN), ECF No. 67 (Dec. 21, 2021) (denying a motion to compel based on selective prosecution brought by defendant charged with violating 18 U.S.C. §§ 111, 231(a)(3); and *United States v. Judd*, 579 F. Supp. 3d 1, 5-9 (D.D.C. 2021) (defendant also charged with violations of 18 U.S.C. §§ 111, 231, and other offenses). Courts have also denied similar motions in cases without a § 231 charge. *See*, *e.g., United States v. Costianes*, 21-cr-180 (RJL) (Apr. 27, 2023 Minute Order denying motion to compel discovery for a selective prosecution claim); *United States v. Groseclose*, 21-cr-311 (CRC), ECF No. 67 ((Oct 27, 2023) denying a nearly identical motion to Brett's but in the context of 18 U.S.C. § 1512); *United States v. Brock*, 21-cr-140 (JDB), ECF No. 57, 2022 WL 3910549, at *11-12 (Aug. 31, 2022); *United States v. Rhodes*, 22-cr-15 (APM), ECF No. 238, 2022 WL 3042200, at *4- 5 (Aug. 2, 2022); and *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021).

roughly the same crime under roughly the same circumstances." *United States v. Judd*, 579 F. Supp. 3d 1, 8 (D.D.C. 2021) (citation omitted). Because he fails to show that any comparators are similarly situated, Mijares cannot meet the heightened standard required to make out a selective prosecution claim justifying dismissal, discovery, or an evidentiary hearing. The Court should deny his motion.

## BACKGROUND

The Court is familiar with the riot that occurred on January 6, 2021, at the U.S. Capitol, including the particularly violent activity that occurred at the Lower West Terrace Tunnel. *See* Statement of Facts, ECF No. 1-1, at 1–4. A brief summary of background specific to this case follows.

Mijares traveled into Washington, D.C., on January 6, 2021, to protest the election and support former President Donald Trump. After the former president's speech at the "Stop the Steal" rally, Mijares walked with the crowd toward the Capitol. Mijares was dressed for battle; he wore a gas mask and tactical vest:



Once he reached the Capitol grounds, Mijares witnessed law enforcement attempting to hold back the mob with crowd control munitions, including sprays and tear gas. Protected by his gas mask, Mijares—his gas mask fully worn—made his way up to the Inaugural Stage and Lower West Terrace, where—at approximately 2:41 p.m.—he pursued Metropolitan Police Department (MPD) officers retreating from the advancing mob into the Lower West Terrace Tunnel. Mijares then assisted rioters in breaching two sets of interior doors within the Tunnel. While breaching the first set of doors, Mijares held up his middle finger at officers before pulling open the broken door in front of him for the mob gathering behind him:



After pulling open the second set of doors, Mijares advanced, raising his arms and pointing at officers while shouting at them:



3

As Mijares drew closer and rioters moved in behind him, officers attempted to push him back using a riot shield. Mijares responded by slamming his body back into that riot shield. The mob then rushed forward to support Mijares and join his push against the officers. During the fighting, Mijares, at one point, grabbed an officer's riot baton and attempted to wrestle it away from the officer:



Mijares remained at the front of the mob, right against the police line, until approximately 2:45 p.m., when he moved backward in the Tunnel mob. However, Mijares quickly, within approximately one minute, pushed back to the front of the mob to re-engage the police line. About 6 minutes later, Mijares again retreated backward into the crowd. He exited the Tunnel at approximately 2:52 p.m. but remained just outside the Tunnel's entrance.

By approximately 3:11 p.m., Mijares reentered the Tunnel. Once inside, Mijares pushed against the rioter in front of him—as did rioters all around him.  Together, Mijares and other members of the mob pushed in a "heave-ho" effort against the police. In the following minutes, Mijares provided additional assistance to rioters in the Tunnel, including passing around riot shields that had been taken from officers. Mijares participated in another "heave-ho" at approximately 3:16 p.m., and left the Tunnel once more at approximately 3:19 p.m.

For his part in the riot, Mijares is charged in a seven-count Indictment, ECF No. 19, with violating 18 U.S.C. § 231(a)(3) (civil disorder) (Count One); 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers) (Count Two); 18 U.S.C. § 1752(a)(1) (entering or remaining in a restricted building or grounds) (Count Three); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Four); 18 U.S.C. § 1752(a)(4) (engaging in physical violence in a restricted building or grounds) (Count Five); 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct in a Capitol building) (Count Six); and 40 U.S.C. § 5104(e)(2)(F) (act of physical violence in the Capitol grounds or buildings) (Count Seven).

Trial is scheduled to begin in this case on November 12, 2024.

## ARGUMENT

Mijares' motion is based primarily on his view that he is similarly situated to individuals who were involved with clashes with police on January 20, 2017, ECF No. 24 ¶ 2. This view attends two conclusory leaps: (1) that these individuals were treated more leniently and (2) that any difference in treatment is due to differing political views. His claim is similar, or identical, to claims that many courts in this district have rejected. Court in this district have properly understood that January 6 was a unique attack on the peaceful transfer of power that threated the entire membership of Congress and the Vice President and resulted in dozens, if not hundreds, of officer assaults. January 6 rioters—like Mijares—"endangered hundreds of federal officials in the Capitol complex. Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters . . . ." *Judd*, 579 F. Supp. at 8. Mijares' "evidence"—devoid of substantiation beyond an attached copy of an indictment—fails to make the key showing: that Mijares is similarly situated to groups who have been treated differently based on political affiliation. In essence, Mijares' arguments are "'personal conclusions based on

anecdotal evidence'" *United States v. Padilla*, 21-cr-214, ECF No. 67, 2023 WL 1964214, at \*4-6 (D.D.C. Feb. 13, 2023) (citing and quoting *United States v. Armstrong*, 517 U.S. 456, 470 (1996)), and do not support the drastic remedies of dismissal, discovery, or an evidentiary hearing.

As such, Mijares ultimately fails to meet the threshold evidentiary showing to overcome the well-established presumption of regularity afforded prosecutorial charging decisions. No court in this district has granted a motion of this kind in the January 6 context, and Mijares' arguments provide no reason for this Court to diverge from that norm.

A. **Legal Framework**

A "presumption of regularity supports . . . prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464 (internal quotation marks and citations omitted). This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Id.*; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's . . . charging determinations" because "the Judiciary . . . generally is not competent to undertake that sort of inquiry." (internal quotation marks and citations omitted)). The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut the presumption of regularity by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *Armstrong*, 517 U.S. at 463, "such as race, religion, or other arbitrary classification," *id*. at 464 (citation omitted). That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608; *see also Armstrong*,  517 U.S. at 465. "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463. "[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion or another arbitrary classification.'" *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019) (quoting *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000)); *see also Irish People, Inc.*, 684 F.2d at 946. "This is a rigorous test; 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'" *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

The standard for obtaining discovery in support of such a claim is also a high one.  The rigorous "showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims."  *Armstrong*, 517 U.S. at 464; *United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (reversing selective-prosecution discovery order that "threatene[d] the 'performance of a core executive constitutional function.'").  To meet this standard, a defendant must "come forward with some evidence tending to show the existence of the essential elements of this defense." *United States v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (quoting *Armstrong*, 517 U.S. at 468).  To meet this standard, the defendant must put forward "some evidence tending to show both discriminatory effect and discriminatory intent." *Lewis*, 517 F.3d at 25 (internal

quotation marks omitted).  Discovery is not permitted unless the defendant's evidence supports both branches of the inquiry: "if either part of the test is failed, defendant cannot subject the Government to discovery." *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.C. Cir. 2019) (internal quotation marks and alterations omitted).

In the First Amendment context, the D.C. Circuit has held that, "to make out a First Amendment selective enforcement claim, the [individual] is not required to allege discriminatory intent.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 1144-45 (D.C. Cir. 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)) (citations omitted). "Nevertheless, the standard for proving such a claim is still 'particularly demanding[.]'" *United States v. Young*, No. 23-CR-241 (GMH), 2024 WL 3030656, at *2 (D.D.C. June 17, 2024) (quoting *Frederick Douglass Found.*, 82 F.4th at 1143–44). Discriminatory effect—a showing that the defendant has been treated differently from similarly situated individuals—is still required. *Frederick Douglass Found.*, 82 F.4th at 1145.

This Court previously explained that an individual may be similarly situated to the defendant if*:*

> "[He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008).[2]

---

[2] "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced. […] A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another. These may include, inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each

"Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). The phrase "similarly situated" is "narrowly" interpreted. *Judd*, 579 F. Supp. 3d at *4 (quoting *Stone*, 394 F. Supp. 3d at 31). Among the factors that must be considered when determining if defendants are "similarly situated" are "the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Lewis*, 517 F.3d at 27-28 (internal citations omitted).

## B. <u>Argument</u>

Mijares alleges that the government has selectively targeted him for prosecution based on his political beliefs but fails to adduce any credible evidence—as *Armstrong* demands—supporting an inference that (1) the government has treated him differently than others similarly situated, or (2) any such disparity implicates his political association. Indeed, his primary argument is that the government has prosecuted participants in the January 6 attack more aggressively than individuals involved in conduct occurring around the time of former President Trump's inauguration on January 20, 2017, but he fails to establish that any of these individuals are similarly situated to violent members, like him, of the unique January 6 mob.

Despite Mijares' suggestion to the contrary, ECF No. 24 at 7, there are significant differences between Mijares' case and those related January 20, 2017. Overall, "January 6 rioters attacked the Capitol in broad daylight," as "[t]housands of congressional staffers," and "hundreds

---

prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." (internal citations omitted).

of legislators and the Vice President" were inside. *Judd*, 579 F. Supp. 3d at 7. Mijares does not

show his purported comparators "caused [a] similar threat." *See id.* Moreover, Mijares committed

crimes at the Lower West Terrace Tunnel: the site of one of, if not the most, dangerous and violent

clashes to take place at the Capitol on January 6. Wearing a gas mask and tactical vest, Mijares

was one of the first rioters that pursued retreating police officers into the Lower West Terrace

Tunnel and *the very first* to start assaulting the front line of officers at the onset of the Tunnel

conflict. Such conduct underscores that Mijares cannot identify a similarly situated defendant

given the "difference in violence, threat to citizen safety, and *scope*." *See United States v. Brock*,

628 F. Supp. 3d 85, 102–03 (D.D.C. 2022) (emphasis added). Indeed, as Judge Kollar-Kotelly

recently noted:

> [T]he Capitol riot was "the most significant assault on the Capitol since the War of
> 1812." *Trump v. Thompson*, 20 F.4th 10, 18–19 (D.C. Cir. 2021); *id.* at 19 ("The
> building was desecrated, blood was shed, and several individuals lost their lives.
> Approximately 140 law enforcement officers were injured, and one officer who had
> been attacked died the next day. . . . Portions of the building's historic architecture
> were damaged or destroyed."). As such, there may very well be "distinguishable
> legitimate prosecutorial factors that might justify different prosecutorial decisions
> between [a comparator] and the defendant." *Judd*, 579 F. Supp. 3d at 4 (internal
> quotation marks and citation omitted). In sum, Defendant fails to make a "credible
> showing of different treatment of similarly situated persons." *Armstrong*, 517 U.S.
> at 470.

*United States v. Brown*, No. 22-cr-170 (CKK), ECF No. 105 at 9.

Moreover, Mijares—by his own words—compares himself with individuals who were, in

fact, prosecuted. As he describes it, "over 225 people" involved in criminal conduct occurring

around the time of former President Trump's 2017 inauguration were "charged in a single

indictment[.]" ECF No. 24 ¶ 4. According to Mijares, "just over 100 of these people" were charged

with rioting and assaulting police officers. *Id.* And, by Mijares' own accounting, some charges—

involving defendants in trial posture—were dismissed only after multiple trials did not lead to

10

convictions. *Id.* ¶ 5.  Ignoring the nuances of each respective case, it is difficult to discern how the government's charging decisions here were any more or less aggressive than the 2017 riot, particularly when one incident involved aggressive conduct against local police serving the District, whereas the other involved a riot at the legislature of the United States where law enforcement—both federal and local—protected federal persons and property during the democratic transition of power.

In any event, Mijares also cannot demonstrate an impermissible motive underpinning any differences in prosecution between himself and a similarly-situated comparator. Indeed, he cites no specific evidence indicating that the prosecution charged him with felonies for any reason other than his own criminal conduct. Mijares "must provide something more than mere speculation" of selective prosecution.  *Stone*, 394 F. Supp. 3d at 31, 36. "[I]t is not enough to simply state that the prosecutor was biased." *See id.* at 36.

## CONCLUSION

Mijares breached a restricted area in the Capitol and helped stoke the violent battle at the Lower West Terrace Tunnel—all during a riot formed to disrupt an important and constitutionally-mandated congressional proceeding. He is not being selectively prosecuted based on his political beliefs; he is being prosecuted based on his egregious criminal conduct, and the Court should deny his motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759

*/s/ Kaitlin Klamann*
KAITLIN KLAMANN
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-6778
Kaitlin.klamann@usdoj.gov
IL Bar No. 6316768