## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
        v.                      )
                                )    Crim. Action No. 24-0041 (ABJ)
GREGORY MIJARES,                )
                                )
                Defendant.      )
_____)
```

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Gregory Mijares has been charged in a seven-count indictment with the following:

> Count I – Civil Disorder in violation of 18 U.S.C. § 231(a)(3);
>
> Count II – Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. § 111(a)(1);
>
> Count III – Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1);
>
> Count IV – Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2);
>
> Count V – Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(4);
>
> Count VI – Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); and
>
> Count VII – Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F).

Ind. [Dkt. # 19] at 1–4.  He has filed a motion to dismiss Counts I and II of the indictment on the grounds of selective prosecution.  *See* Def.'s Mot. to Dismiss [Dkt. # 24] ("Mot.").  The government has opposed the motion, and the matter is fully briefed.  *See* Gov't's Opp. to Mot.

[Dkt. # 25] ("Opp."); Def.'s Reply to Opp. [Dkt. # 26] ("Reply").  For the reasons set forth below, the motion will be **DENIED.**

## BACKGROUND

The defendant is one of more than a thousand people charged with criminal conduct in connection with the riots at the U.S. Capitol building on January 6, 2021.  According to the government, the defendant attended former President Donald Trump's speech at the "Stop the Steal" rally and then walked with the crowd toward the Capitol.  Opp. at 2.  Defendant made his way to the Inaugural Stage and Lower West Terrace, wearing a gas mask and a tactical vest.  *Id.* at 2–3.  At approximately 2:41 p.m., he allegedly pursued Metropolitan Police Department officers that were retreating from an advancing mob into the Capitol's Lower West Terrace tunnel.  *Id.* The defendant assisted rioters in breaching two sets of interior doors within the tunnel, advancing toward the officers while rioters moved in behind him.  *Id.* at 3–4.  When officers attempted to push the defendant back using a riot shield, he slammed his body back into their shield.  *Id.* at 4. The mob then allegedly joined defendant's push against the officers and rushed forward.  *Id.*  The government alleges that at one point, the defendant grabbed an officer's riot baton and tried to wrestle it away from the officer.  *Id.*

The defendant allegedly remained at the front of the mob against the police line until 2:45 p.m., briefly moving backward into the tunnel mob and then quickly pushing back to the front to "re-engage the police line."  *Id.*  After approximately six minutes, defendant retreated into the crowd and left the tunnel around 2:52 p.m., but remained outside of the tunnel's entrance and reentered at 3:11 p.m.  *Id.*  Once he was back inside of the tunnel, the defendant allegedly joined other rioters in pushing in a "heave-ho" effort against the police and passed around riot shields that had been taken from officers.  *Id.*  The defendant left the tunnel at approximately 3:19 p.m.  *Id.*

In his motion, defendant contends that he has been unlawfully singled out for prosecution because protestors who came to D.C. in 2017 to protest against former President Trump's inauguration and clashed with police received more favorable treatment.  Mot. at 5.

## STANDARD OF REVIEW

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense."  *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'"  *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1881).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including any constitutional infirmities.  *See United States v. Eshetu*, 863 F.3d 946, 952–3 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018).  "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations."  *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).  A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use[] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental

role of the grand jury.'"  *Id.* at 148, quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360

(1st Cir. 1995) (alternations in original) (internal citations omitted).

With respect to a motion alleging selective prosecution, the Supreme Court emphasized in

*United States v. Armstrong*, 517 U.S. 456 (1996) that "the presumption of regularity" applies

to "prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume

that [prosecutors] have properly discharged their official duties.  . . .  [S]o long as the prosecutor

has probable cause to believe that the accused committed an offense defined by statute, the decision

whether or not to prosecute . . . generally rests entirely in his discretion."  517 U.S. at 464 (internal

quotation marks, citations, and alterations omitted); *see also United States v. Slatten*, 865 F.3d

767, 799 (D.C. Cir. 2017), *citing Armstrong*, 517 U.S. at 464 ("[P]rosecutors have broad discretion

to enforce the law.").

The Supreme Court has further explained that this deference to the Executive's

prosecutorial decision-making "stems from a concern not to unnecessarily impair the performance

of a core executive constitutional function."  *Armstrong*, 517 U.S. at 465.  Thus, "judicial authority

is . . . at its most limited" when reviewing the Executive's charging determinations, because the

judiciary is generally not "competent to undertake" such an assessment.  *United States v. Fokker*

*Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016), quoting *Cmty. for Creative Non–Violence v.*

*Pierce,* 786 F.2d 1199, 1201 (D.C. Cir. 1986), and *Wayte v. United States*, 470 U.S.

598, 607 (1985).

But this does not mean prosecutors are free to operate without any limitations; "the decision

whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other

arbitrary classification."  *Armstrong*, 517 U.S. at 464, quoting *Oyler v. Boles*, 368 U.S. 448, 456

(1962).  And the exercise of prosecutorial discretion is "subject to constitutional constraints,"

including a prohibition on selectively prosecuting individuals for exercising their constitutional rights. *Id.*, quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979); *see Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 932 n.11, 935–36 (D.C. Cir. 1982).

"In order to prove a selective-prosecution claim, the claimant must demonstrate that the prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 457. Applying *Armstrong*, the D.C. Circuit has called for a two-pronged showing that: (1) the defendant was "singled out for prosecution from among others similarly situated" and (2) the "prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000), quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983); *see also United States v. Blackley*, 986 F. Supp. 616, 617–18 (D.D.C. 1997); *United States v. Palfrey*, 499 F. Supp. 2d 34, 39 (D.D.C. 2007). "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

## ANALYSIS

Here, the defendant has failed to make a showing that he has been singled out of a group of similarly situated individuals or that he was charged for an improper reason.

### 1.    Defendant has not shown that that he was singled out for prosecution from other similarly situated individuals.

The Supreme Court has recognized that there are a variety of considerations that may factor into a prosecutor's decision to prosecute someone: "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Armstrong*, 517 U.S. at 465. "[D]efendants are similarly situated" for purposes of a selective enforcement claim "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different

prosecutorial decisions with respect to them." *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997), *cited with approval in Branch Ministries*, 211 F.3d at 145.  Or as the Eleventh Circuit put it, an individual may be similarly situated if they:

> engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan – and against whom the evidence was as strong or stronger than that against the defendant.

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000); *see also United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

Courts in this district have interpreted the phrase "similarly situated" narrowly, insisting that a defendant must show that the crimes charged and those allegedly committed by the comparator are the same or similar and arose in similar circumstances.  In *United States v. Blackley*, the defendant, a public official, was charged with a violation of 18 U.S.C. § 1001 based on his alleged failure to report his receipt of a check from a business associate on his Financial Disclosure Report.  986 F. Supp. at 618.  Defendant claimed that he had been unfairly selected out of the entire group of individuals who had ever omitted the receipt of a payment on a disclosure form subject to section 1001.  *Id.* at 618.  The court commented:

> [I]t strains credulity to presume that all of these individuals constitute 'similarly situated' people. . . .  Rather, to prevail on this prong, defendant needs to prove that there exist persons who *engaged in similar conduct* and were not prosecuted. . . .  If defendant could point to a group of government officials who were alleged to have received checks from persons with business before those officials' agencies, and those individuals were not prosecuted under 18 U.S.C. § 1001 for either their alleged failure to disclose said checks on financial disclosure forms, or for their alleged false statements on sworn declarations, Blackley's claim could theoretically survive the first prong of the selective prosecution test.  In the absence of such a showing, it cannot.

*Id.* (emphasis in original).[1]

"Strains credulity" is an apt characterization of the defendant's suggestion that he has been singled out and treated differently from a group he claims was similarly situated.  There have been over 1,200 people charged with offenses committed at the Capitol on January 6, including many who were engaged in one of the most brutal battles of the day: the two hour standoff in the tunnel where officers fought to keep protesters – many of whom were armed with chemical spray, blunt objects, and projectiles – from breaching their line and gaining entry to the building through the doors leading directly to the House chamber.  And the Court's docket reflects that since January 6, the U.S. Attorney's office has been working assiduously to prosecute as many of those allegedly involved in the confrontation and combat as could be identified.  Since the defendant cannot possibly differentiate himself from those who were truly in like circumstances, facing similar

---

1   *See also United States v. Khanu*, 664 F. Supp. 2d 28, 33 (D.D.C. 2009) (finding that defendant had not met his burden to show that his alleged co-conspirators were similarly situated because defendant was more involved and took a leadership role in the conspiracy); *United States v. Edelin*, 134 F. Supp. 2d 59, 88 (D.D.C. 2001) ("It may be difficult for the defendant to find an individual of another race who has allegedly committed multiple murders, three of them capital, in addition to multiple attempted murders and assaults with intent to murder, and yet had never been prosecuted.").

charges, he seeks to draw an analogy to an entirely different event in the District of Columbia that took place four years before and bears no resemblance to this case.

Defendant maintains that he is "similarly situated" to individuals who were involved in clashes with the police during the inauguration of former President Trump on January 20, 2017. Mot. at 5.  He points to video footage of the day to argue that the police steered many of these inauguration protestors into an area and "effectively trapped them in what is referred to as a 'kettle,'" leading the protestors to charge the police line in an "attempt to escape" and struggle with officers as the defendant did in the tunnel on January 6.  *Id.* at 2.  He points to the charges that were brought against the inauguration protestors in D.C. Superior Court, noting that just over 100 of these defendants were charged with Assaulting, Resisting or Interfering with a Police Officer in violation of D.C. Code § 22–405(b), and that the government dismissed this charge against "most – if not all" of the defendants "after failing to secure any convictions" against ten defendants in two separate trials.  *Id.* at 3–4.  Because the United States Attorney's Office for the District of Columbia is now prosecuting the defendant "for conduct that is qualitatively similar to the conduct that it failed to prosecute" against the inauguration protestors charged with this misdemeanor count, defendant argues that the government is selectively prosecuting him based on his political views, which he posits is the only "salient difference" between their conduct and his. *Id.* at 4–5.

"Qualitatively similar?"  The motion contains no facts to support that characterization.

There are several "salient differences" between the defendant's alleged conduct and the conduct of the 2017 protestors, and there is nothing "similarly situated" about those trapped in the "kettle" to whom defendant would like to be compared. First and foremost, as the defendant admits, the individuals who were protesting the inauguration were on public streets – not on

8

restricted property.  *See* Mot. at 2.  And as the defendant himself put it, the inauguration protesters he claims were arrested for rushing the police line did so "in an attempt to escape."  *Id.*  Yet he does not even suggest that he or any January 6 protester was circled and corralled or "kettled" in the tunnel; he allegedly pushed *into* the space on his own volition in an effort to breach the Capitol building that was closed to the public.  Twice.  *See* Opp. at 4.  As the government alleges, officers first sought to hold the mob back from breaching the Capitol and later "*retreat[ed]* from the advancing mob into the Lower West Tunnel."  Opp. at 3 (emphasis added).

Nor is it relevant that the cases against many of the 2017 protestors were dismissed.  As defendant points out, they were dismissed in an exercise of prosecutorial discretion after the first round of trials resulted in acquittals.  Mot. at 4.  This is precisely the sort of decision that is left to the executive branch.  And what the defendant leaves out is that the problem with those cases was – as the defendant observes – many of them were wearing all black clothing and masks.  Mot. at 2. So it was exceedingly difficult to know who did what, and the government's attempt to connect particular individuals with particular acts of destruction of property in the city that day fell short. And as the defendant cites, charges against several of these defendants were dismissed due to prosecutorial misconduct.  *See* Mot. at 4,citing Keith L. Alexander, *Federal Prosecutors Abruptly Dismiss All 39 Remaining Inauguration Day Rioting Cases*, Wash. Post (July 7, 2018), https://www.washingtonpost.com/local/public-safety/federal-prosecutors-abruptly-dismiss-all-remaining-inauguration-day-rioting-cases/2018/07/06/d7055ffe-7ee8-11e8-bb6b-c1cb691f1402_story.html.

Very few people were arrested on the Capitol grounds on January 6 at all – the goal of the law enforcement effort was to re-establish the security of the building so that the certification of the electoral college vote could proceed.  So there was no mass arrest or restraint that could be

comparable to 2017.  But unlike the alleged offenses the officers were trying to address in 2017, the events in the tunnel on January 6 were captured on video, and the arrests that followed were made one at a time as the alleged perpetrators were identified.

Moreover, when one talks about the alleged conduct, the differences are striking.  The government alleges that defendant "was one of the first rioters that pursued retreating police officers into the Lower West Terrace Tunnel and *the very first* to start assaulting the front line of officers at the onset of the Tunnel conflict."  Opp. at 10 (emphasis in original).  Individuals are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Hastings*, 126 F.3d at 315 (citation omitted).  These obvious differences between the conduct underlying the defendant's felony charge and the conduct underlying the inauguration protestors' misdemeanor charge do not meet the demanding standard for a claim of selective prosecution.  Rather, the allegations against this defendant show that he is "similarly situated" to the many individuals

depicted in video footage from January 6 engaged in battle with the police officers in the tunnel
and prosecuted for their conduct.[2]

### 2.   Defendant has not shown that his prosecution was improperly motivated.

Even if the defendant could point to an individual or individuals who are similarly situated,
he must also show that his prosecution was motivated by a discriminatory purpose. *Armstrong*,
517 U.S. at 457.  This second prong of the test requires a defendant to come forward with some
evidence showing that his prosecution was based upon an unlawful or arbitrary classification. *See*
*Branch Ministries*, 211 F.3d at 144.  And here, defendant's showing is non-existent.

---

2      Other courts in this district have resisted similar efforts to compare the unprecedented
events of January 6 with other political protestors and advance a selective prosecution argument,
noting that "January 6 rioters attacked the Capitol in broad daylight.  .  .  .  [T]heir actions
endangered hundreds of federal officials in the Capitol complex," including thousands of
congressional staffers, hundreds of legislators, and the Vice President. *See United States v. Judd*,
579 F. Supp. 3d 1, 7–8 (D.D.C. 2021) (TNM) (finding that a January 6 defendant charged with
violations of 18 U.S.C. §§ 111, 231, and other offenses was not similarly situated to other
defendants charged after riots at a federal courthouse in Portland); *United States v. Brock*, 628 F.
Supp. 3d 85, 103 (D.D.C. 2022) (JDB), *aff'd*, No. 23-3045, 2023 WL 3671002 (D.C. Cir. May 25,
2023) (noting "the difference in violence, threat to citizen safety, and scope" of the January 6 riot
compared to other protestors who have clashed with police); *see also* Order at 4, *United States v.
Groseclose*, No. 21-cr-311 (CRC), (D.D.C. Oct. 27, 2023) (ECF No. 67) (denying selective
prosecution argument comparing January defendant to "demonstrators arrested at now-Justice
Kavanaugh's confirmation hearings, activists removed from a congressional hearing after
objecting to Medicaid cuts, environmental protesters who allegedly impeded access to the Capitol
in an effort to force a vote on a climate emergency resolution, and persons who attacked a federal
courthouse in Portland, Oregon, in the summer of 2020."); Minute Entry, *United States v. DaSilva*,
21-cr-564 (CJN), (D.D.C. July 12, 2023) (denying January 6 defendant's motion to dismiss
arguing that he was selectively prosecuted for his political beliefs in comparison to May 2020
progressive protestors outside of the White House who pushed against police shields but were not
charged); *United States v. McHugh*, No. 21-cr-453 (JDB), 2023 WL 2384444, at *13 (D.D.C. Mar.
6, 2023) (denying selective prosecution comparing January 6 defendants to various political
protestors); *See* Order at 4, *United States v. Miller*, 21-cr-119 (CJN) (D.D.C. Dec. 21, 2021) (ECF
No. 67) (denying selective prosecution argument comparing January 6 defendant to Portland
protestors).  And those considerations do not even include the threat to the foundation of our
democracy – the peaceful transfer of power – that was posed by the protest at the Capitol while
the certification of the election was underway, and the building was closed to the public.

Defendant merely argues that the "salient difference" between the relevant conduct he was charged with and the conduct the inauguration protestors were charged with is that his took place during a pro-Trump protest, while theirs was during an anti-Trump protest, so "the government is selectively prosecuting him based on his political views."  Mot. at 5.  He points to nothing that would substantiate his attribution of his indictment to his political views, and this mere speculation cannot provide evidence of a discriminatory motive.

> **3.**     **Defendant has not shown that he is entitled to discovery or an evidentiary hearing for his selective prosecution claim.**

The standard for obtaining discovery regarding selective prosecution is "correspondingly rigorous" because "[i]f discovery is ordered, . . . [i]t will divert prosecutors' resources and may disclose the Government's prosecutorial strategy."  *Armstrong*, 517 U.S. at 468.  Thus, defendant must put forward "some evidence tending to show the existence of the essential elements" of a selective prosecution claim.  *Id.* at 470, quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. (1974); *see also United States v. AT&T Inc.*, 290 F. Supp. 3d 1, 3–4 (D.D.C. 2018).  This evidence must be "credible," and the defendant must provide something more than mere speculation or "personal conclusions based on anecdotal evidence."  *Armstrong*, 517 U.S. at 470; *see also United States v. Mack*, 53 F. Supp. 3d 179, 188 (D.D.C. 2014) (since the defendant had "not put forth a shred of evidence even hinting at the existence of a discriminatory purpose behind the decision to prosecute him" and not his comparators, the court denied discovery).

Because the defendant has failed to put forth any evidence supporting his selective prosecution claim, the Court will deny his request to compel discovery and to hold an evidentiary hearing with respect to his selective prosecution claim.

12

## CONCLUSION

For all of these reasons, defendant's motion to dismiss [Dkt. # 24] for selective prosecution

is **DENIED**.

**SO ORDERED.**


AMY BERMAN JACKSON
United States District Judge

DATE:  September 6, 2024

13